## Case No. 20-40849

### IN THE
### UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

IN RE: BLAINE KEITH MILAM,
MOVANT

---------------------------------------------

CONSOLIDATED W/20-70024

BLAINE KEITH MILAM,
*Petitioner–Appellant*

V.

BOBBY LUMPKIN,
Director, Texas Department of Criminal Justice,
Correctional Institutions Division,
*Respondent–Appellee*

On Appeal from the United States District Court for the Eastern District
of Texas, Tyler Division, No. 6:20-cv-646

### PETITIONER–APPELLANT'S BRIEF

Jeremy Schepers
Supervisor, Capital Habeas Unit
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
jeremy_schepers@fd.org

Jennae R. Swiergula
Texas Defender Service
1023 Springdale Road #14E
Austin, TX 78721
512-320-8300
jswiergula@texasdefender.org

***Execution date set for January 21, 2021***

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described by the Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. **Blaine Milam**
   Petitioner-Appellant

2. **Don Bailey**
   Former federal post-conviction counsel for Petitioner-Appellant

3. **T. Scott Smith**
   Former federal post-conviction counsel for Petitioner-Appellant

4. **Jennae R. Swiergula**
   Federal post-conviction counsel

5. **Jeremy Schepers**
   Federal post-conviction counsel

6. **Bobby Lumpkin**
   Director, TDCJ, Correctional Institutions Division
   Respondent-Appellee

7. **Tomee Heining**
   Counsel for Respondent-Appellee

8. **Hon. Jeremy D. Kernodle**
   U.S. District Court, E.D. Texas

/s/    Jeremy Schepers
Jeremy Schepers
Supervisor, Capital Habeas Unit
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
Jeremy_Schepers@fd.org

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to <u>Federal Rule of Appellate Procedure 34(a)</u>, Petitioner–Appellant Blaine Milam respectfully requests oral argument for the resolution of this appeal. Due to the complexity of the legal issues in this case, oral argument will assist this Court in its decision-making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS ..........................................................iv

INTRODUCTION..................................................................... 1

JURISDICTIONAL STATEMENT ............................................3

STATEMENT OF ISSUES..........................................................4

STATEMENT OF THE CASE ............................................... 4

SUMMARY OF THE ARGUMENT ......................................15

ARGUMENT ..........................................................................18

I.  The district court erred in transferring Mr. Milam's Petition based on this Court's denial of his Motion for Authorization...........................18

II.  The district court erred in transferring Mr. Milam's Petition on the ground that it required authorization under 28 U.S.C. § 2244(b)(3).....21

  A.  Should 28 U.S.C. § 2244(b) bar any federal court review of Mr. Milam's Eighth Amendment claim, it is unconstitutional as applied to him. 22

    1.  The application of 28 U.S.C. § 2244(b) to bar any federal habeas review of Mr. Milam's intellectual disability claim violates the Eighth Amendment. ........................................................................23

    2.  The application of 28 U.S.C. § 2244(b) to bar any federal habeas review of Mr. Milam's intellectual disability claim violates the Suspension Clause. ........................................................................26

  B.  To avoid the complex questions regarding the constitutionality of 28 U.S.C. § 2244(b) as applied to Mr. Milam, the Court should hold that Mr. Milam's Petition does not constitute a "second or successive" petition within the meaning of that statute. ......................................28

1.  Mr. Milam's Petition is a second-in-time initial petition because the Eighth Amendment prohibition runs to execution and the adjudication of intellectual disability must be informed by current legal and clinical standards. ........................................................... 31

2.  Mr. Milam's petition does not constitute an abuse of the writ because he did not have a full and fair opportunity to raise his Eighth Amendment claim in a prior application. ........................................ 34

3.  Should this Court find that Mr. Milam's Petition does constitute an abuse of the writ, Mr. Milam can show that a fundamental miscarriage of justice would result from failure to consider his Eighth Amendment claim. ............................................................ 38

CONCLUSION ....................................................................... 40

CERTIFICATE OF SERVICE ................................................ 42

CERTIFICATE OF COMPLIANCE ........................................ 42

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Atkins v. Virginia,*
   536 U.S. 304 (2002) .................................................................... *passim*

*Ex parte Blue,*
   230 S.W.3d 151 (Tex. Crim. App. 2007) ............................... 9

*Bourgeois v. Watson,*
   2020 WL 7296816, 592 U.S. __ (2020) .................................. 32

*Ex parte Briseno,*
   135 S.W.3d 1 (Tex. Crim. App. 2004) ................................... 5

*In re Campbell,*
   750 F.3d 523 (5th Cir. 2014) .................................... 1, 19, 23

*Commonwealth v. Brown,*
   71 A.3d 1009 (Pa. 2013) .......................................................... 23

*Felker v. Turpin,*
   518 U.S. 651 (1996) ........................................................ 27, 29

*Fierro v. Cockrell,*
   294 F.3d 674 (5th Cir. 2002) ............................................... 19

*Ford v. Wainwright,*
   477 U.S. 399 (1986) .................................................................. 33

*Fuentes v. Shervin,*
   407 U.S. 67 (1972) ..................................................................... 9

*Garza v. State,*
   435 S.W.3d 258 (Tex. Crim. App. 2014) ............................. 23

*Graham v. Johnson,*
   168 F.3d 762 (5th Cir. 1999) ............................................... 17

*Ex parte Gutierrez,*
 2008 WL 4417161 (Tex. Crim. App. Oct. 1, 2008).....................................7

*Ex parte Gutierrez,*
 2020 WL 6930823 (Tex. Crim. App. Nov. 25, 2020)............................7

*Hall v. Florida,*
 572 U.S. 701 (2014)........................................... 11, 20, 32, 33

*Harris v. Nelson,*
 394 U.S. 286 (1969)........................................................27

*Ex parte Henderson,*
 2006 WL 167836 (Tex. Crim. App. Jan. 25, 2006) .............................7

*Ex parte Henderson,*
 2020 WL 1870477 (Tex. Crim. App. Apr. 15, 2020) ...........................7

*Holland v. Florida,*
 560 U.S. 631 (2010).........................................................39

*I.N.S. v. St. Cyr,*
 533 U.S. 289 (2001).........................................................28

*Ibarra v. Davis,*
 738 F. App'x 814 (5th Cir. 2018)............................... 2, 26, 38

*Johnson v. Robison,*
 415 U.S. 361 (1974).........................................................28

*Leal Garcia v. Quarterman,*
 573 F.3d 214 (5th Cir. 2009).............................................30

*Lee v. Kelley,*
 854 F.3d 544 (8th Cir. 2017)............................................33

*Ex parte Lizcano,*
 2015 WL 2085190 (Tex. Crim. App. Apr. 15, 2015) ..........................7

*Ex parte Lizcano,*
 2020 WL 5540861 (Tex. Crim. App. Sept. 16, 2020) .........................7

*Magwood v. Patterson,*
  561 U.S. 320 (2010) ................................................................ 34, 35

*Marbury v. Madison,*
  5 U.S. (1 Cranch) 137 (1803) ...................................................... 3, 25

*McKleskey v. Zant,*
  499 U.S. 467 (1991) ...................................................................... 38

*McQuiggin v. Perkins,*
  569 U.S. 383 (2013) ...................................................... 28, 29, 39

*Milam v. Davis,*
  139 S. Ct. 335 (2018) (Mem) ............................................................ 8

*Milam v. Davis,*
  733 F. App'x 781 (5th Cir. 2018) ...................................................... 6

*Milam v. Director,*
  2017 WL 3537272 (E.D. Tex. Aug. 16, 2017) ............................ 5, 6, 20

*Ex parte Milam,*
  2019 WL 190209 (Tex. Crim. App. Jan. 14, 2019) ............................ 9

*Ex parte Milam,*
  2020 WL 3635921 (Tex. Crim. App. July 1, 2020) ............................ 9

*In re Milam,*
  No. 20-40663 (5th Cir. Oct. 27, 2020) ........................................ *passim*

*Miller v. Alabama,*
  587 U.S. 460 (2012) ...................................................................... 23

*Miller-El v. Cockrell,*
  537 U.S. 322 (2003) ...................................................................... 36

*Montgomery v. Louisiana,*
  136 S. Ct. 718 (2016) ...................................................... 2, 24, 26, 37

*Moore v. Texas,*
  137 S. Ct. 1039 (2017) ........................................................ *passim*

*Moore v. Texas,*
139 S. Ct. 666 (2019) ............................................................................. 7

*Panetti v. Quarterman,*
551 U.S. 930 (2007) ...................................................... 29, 30, 31, 34

*Prieto v. Zook,*
791 F.3d 465 (4th Cir. 2015) ............................................................ 38

*Rivera v. Quarterman,*
505 F.3d 349 (5th Cir. 2007) ........................................................... 33

*Sawyer v. Whitley,*
505 U.S. 333 (1992) .............................................................................. 38

*Slack v. McDaniel,*
529 U.S. 473 (2000) .............................................................................. 29

*Stewart v. Martinez-Villareal,*
532 U.S. 637 (1998) .............................................................................. 30

*Sunal v. Large,*
332 U.S. 174 (1947) .............................................................................. 26

*United States v. Fulton,*
780 F.3d 683 (5th Cir. 2015) ....................................................... 3, 18

*Webster v. Daniels,*
784 F.3d 1123 (7th Cir. 2015) (en banc) ........................... 23, 24, 26, 40

*White v. Commonwealth,*
600 S.W.3d 176 (Ky. 2020) ............................................................... 23

*Williams v. State,*
270 S.W.3d 112 (Tex. Crim. App. 2008) ........................................ 7

*Ex parte Williams,*
2020 WL 7234532 (Tex. Crim. App. Dec. 9, 2020) .............................. 7

**Statutes**

28 U.S.C. § 1291 ..................................................................................... 3

28 U.S.C. § 1331 ............................................................... 3

28 U.S.C. § 2241 ............................................................... 3

28 U.S.C. § 2244 ......................................................... *passim*

28 U.S.C. § 2253 ............................................................... 3

28 U.S.C. § 2254 ......................................................... *passim*

## Other Authorities

U.S. CONST. amend. VIII ............................................. *passim*

U.S. CONST. art. I § 9 ................................................. *passim*

## INTRODUCTION

"[T]he Constitution 'places a substantive restriction on the State's power to take the life' of a[n intellectually disabled] offender." *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (quoting *Ford v. Wainwright*, 477 U.S. 399, 405 (1986)); *In re Campbell*, 750 F.3d 523, 535 (5th Cir. 2014) (intellectually disabled person "may not constitutionally be executed"). In other words, states do not have the power to execute intellectually disabled individuals. There is significant evidentiary support for Mr. Milam's claim that he is intellectually disabled. However, Mr. Milam has never received *any* federal court review of the merits of his claim. The district court determined that Mr. Milam must obtain authorization pursuant to 28 U.S.C. § 2244(b) to access federal court merits review of his intellectual disability claim, a bar that he acknowledges this Court previously held he cannot meet. If the district court is correct, then § 2244(b) operates to imbue Texas with the power to do that which the Constitution prohibits—execute a person who falls within a class whose execution is forbidden by the Eighth Amendment.

Mr. Milam sought to raise his intellectual disability claim for the first time in federal court by seeking authorization from this Court under

§ 2244(b). He presented evidentiary proffers that three of the four psychological experts who have evaluated Mr. Milam for all three prongs of intellectual disability—including an expert retained by the State at trial—determined that Mr. Milam is intellectually disabled. 53 RR 239; ROA.63, 117. While acknowledging that Mr. Milam produced information in support of all three prongs of an intellectual disability diagnosis, this Court denied Mr. Milam authorization, finding that he could not establish the prior unavailability of his claim and that consequently § 2244(b) barred federal review of that claim. *In re Milam*, No. 20-40663 (5th Cir. Oct. 27, 2020).

Mr. Milam's case presents this Court with the question of whether a claim, like an intellectual disability claim, that categorically prohibits a certain punishment can be forfeited. As applied, § 2244(b) would operate to permit such forfeiture in this case. Yet, merits review by a federal court of a claim that implicates an absolute bar on the state's power to punish should not be entirely foreclosed. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 731 (2016) (explaining that "a court has no authority to leave in place a conviction or sentence that violates a substantive rule"); *cf. Ibarra v. Davis*, 738 F. App'x 814, 821 (5th Cir.

2018) (Graves, J., dissenting in part) ("More importantly, failure to consider the claim would result in a fundamental miscarriage of justice if an intellectually disabled man were to be unconstitutionally executed.").

The operation of § 2244(b) to bar federal court review of this claim threatens to empower the State to violate the Constitution by disabling the Eighth Amendment's prohibition on the execution of persons with intellectual disability as to Mr. Milam. Yet, it is well settled that the Constitution is the "the *supreme* law of the land[.]" *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 180 (1803) (emphasis in original). Therefore, § 2244(b) must yield to the Constitution. This Court should hold that the district court erred by transferring Mr. Milam's Petition to this Court.

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Texas, Tyler Division, had jurisdiction pursuant to 28 U.S.C. §§ 1331, 2241(a) and (b), and 2254(a). ROA.8. A timely notice of appeal from the district court's Order of Transfer was filed on December 18, 2020, a final order disposing of this matter in that court. ROA.285–86. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. *See United States v.*

*Fulton*, 780 F.3d 683, 688 (5th Cir. 2015) (explaining that a certificate of appealability is unnecessary to appeal district court order transferring case to court of appeals).

## STATEMENT OF ISSUES

Petitioner–Appellant Blaine Milam is confined on death row at the Polunsky Unit in Livingston, Texas. He is scheduled for execution on January 21, 2021. Mr. Milam petitions this Court to review the following issue on appeal:

I.    Whether the district court erred in transferring Mr. Milam's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2244 to this Court.

## STATEMENT OF THE CASE

### A. Trial and initial state and federal habeas proceedings.

Mr. Milam was found guilty of capital murder and sentenced to death on May 27, 2010, in the 4th District Court of Rusk County, Texas. 56 RR 180. At sentencing, Mr. Milam alleged that he is intellectually disabled and therefore categorically ineligible to receive a death sentence. The State urged the jury to rely on stereotypes relevant under Texas's then-standard in its evaluation of the intellectual disability

special issue.[1] The jury answered that special issue negatively. 4 CR 987. Mr. Milam did not challenge the jury's determination on intellectual disability under Texas's now overruled *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), framework on direct appeal or in initial state habeas proceedings.

Mr. Milam filed a Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of Texas on October 14, 2014. *Milam v. Stephens*, No. 4:13-cv-00545 (E.D. Tex. Oct. 14, 2014). The Petition did not allege that, under *Atkins v. Virginia*, the Eighth Amendment prohibited the State from executing Mr. Milam because he

---

[1] As summarized by the Director in his Answer to Mr. Milam's initial Petition for Writ of Habeas Corpus:

> Prosecutor Lisa Tanner closed by arguing Milam was unequivocally not intellectually deficient based upon the four IQ scores- two of which indicated he was in the borderline range and two which clearly showed he was not in that range. . . . Regarding adaptive functioning, Tanner referred to the testimony from school teachers, friends, coworkers, and family . . . She reminded the jury that Milam passed a driving test, was able to find and keep employment, wrote letters from jail, read books, used computers and the internet, memorized his driver's license number and social security number, fixed cars and other machinery, did school work, played games, cared for Amora, and could carry on a conversation. 56 RR 134–36.

*Milam v. Stephens*, No. 4:13-CV-00545-RAS (E.D. Tex.), Respondent Stephens's Answer with Brief in Support at 105–06.

is intellectually disabled. The briefing in Mr. Milam's federal habeas proceedings was completed in March 2015. *Milam v. Stephens*, No. 4:13-CV-00545-RAS, Respondent Stephens's Answer with Brief in Support. On August 16, 2017, the district court denied Mr. Milam's federal habeas petition, *Milam v. Director*, No. 4:13-cv-00545, 2017 WL 3537272, at *51 (E.D. Tex. Aug. 16, 2017), and this Court denied Mr. Milam's Application for a Certificate of Appealability shortly thereafter, *Milam v. Davis*, 733 F. App'x 781 (5th Cir. 2018).

### B. The new rule of constitutional law announced by the Supreme Court in *Moore v. Texas* changes the class of persons in Texas whose execution is forbidden by the Eighth Amendment.

In *Moore v. Texas*, 137 S. Ct. 1039 (2017), the Supreme Court announced that the Eighth Amendment places substantive requirements on how a state must define the class of intellectually disabled persons exempt from execution.[2] *Moore*, 137 S. Ct. at 1052–53. More specifically,

---

[2] At the time of Mr. Milam's trial in 2010 and the filing of his initial federal habeas petition in 2014, *Atkins* held that "the Constitution 'places a substantive restriction on the State's power to take the life' of a[n intellectually disabled] offender." *Atkins*, 536 U.S. at 321 (quoting *Ford*, 477 U.S. at 405). *Atkins*, however, declined to resolve "serious disagreement . . . in determining which offenders are in fact [intellectually disabled]." *Id.* at 317. Accordingly, each state was required to define the class of offenders whose status as an intellectually disabled person placed them beyond the reach of the death penalty. *Id.* (deciding to "'leave to the State[s] the task of

6

*Moore* held that the class may not be defined by lay stereotypes about intellectual disability and must reflect "[t]he medical community's standards[.]" *Id.* at 1053. *Moore*'s definition of the class of people who are ineligible for execution under the Eighth Amendment changed the class defined by Texas courts to encompass people previously excluded. *Id.* at 1044; *see Moore v. Texas*, 139 S. Ct. 666, 672 (2019) (rejecting the CCA's consideration of criteria not reflected in the medical community's standards and finding that "Moore has shown he is a person with intellectual disability"). Since *Moore*, several defendants who were found not to be intellectually disabled under Texas's prior standard created in response to *Atkins* have now been found intellectually disabled under *Moore*.[3]

---

developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences'" (quoting *Ford*, 477 U.S. at 416–17) (alterations in original)).

[3] *See Moore*, 139 S. Ct. 666, 672 (2019) (finding Moore intellectually disabled); *Ex parte Henderson*, No. WR-37,658-03, 2020 WL 1870477 (Tex. Crim. App. Apr. 15, 2020) (per curiam) (granting relief on a claim of intellectual disability upon reconsideration of the case in the light of *Moore v. Texas*); *cf. Ex parte Henderson*, No. WR-37,658-03, 2006 WL 167836 (Tex. Crim. App. Jan. 25, 2006) (per curiam) (adopting trial court's recommendation to deny intellectual disability claim); *Ex parte Lizcano*, No. 68,348-03, 2020 WL 5540861 (Tex. Crim. App. Sept. 16, 2020) (per curiam) (granting relief on a claim of intellectual disability upon remand of the case in the light of *Moore v. Texas*); *cf. Ex parte Lizcano*, No. 63,348-03, 2015 WL 2085190 (Tex. Crim. App. Apr. 15, 2015) (per curiam) (adopting trial court's recommendation to deny intellectual disability claim); *Ex parte Gutierrez*, No. WR-70,152-03, 2020 WL 6930823 (Tex. Crim. App. Nov. 25, 2020) (granting relief on a claim of intellectual

The Supreme Court decided *Moore* in March 2017. At that time, Mr. Milam's initial federal habeas petition was pending in district court and had been fully briefed since March 2015. No further filings occurred in the four months between *Moore* and the district court's denial of Mr. Milam's petition.

### C. Subsequent state habeas proceedings after *Moore v. Texas*.

In light of the Supreme Court's decision in *Moore v. Texas*, 137 S. Ct. 1039 (2017), Mr. Milam filed a subsequent state habeas application alleging, *inter alia*, that he is intellectually disabled according to the medical community's diagnostic criteria and that his execution would therefore violate the Eighth Amendment.[4] The Texas Court of Criminal Appeals ("CCA") initially determined that Mr. Milam's claim should receive adjudication on the merits. It stayed Mr. Milam's execution and

---

disability upon remand of the case in the light of *Moore v. Texas*); *cf. Ex parte Gutierrez,* No. WR-70,152-01, 2008 WL 4417161 (Tex. Crim. App. Oct. 1, 2008); *Ex parte Williams*, No. WR-71,296-03, 2020 WL 7234532 (Tex. Crim. App. Dec. 9, 2020) (granting relief on a claim of intellectual disability upon remand of the case in the light of *Moore v. Texas*); *cf. Williams v. State*, 270 S.W.3d 112 (Tex. Crim. App. 2008) (finding that evidence was sufficient to support jury's negative answer to the intellectual disability issue in the punishment charge at trial).

[4] On September 11, 2018, with Mr. Milam's petition for writ of *certiorari* pending in the Supreme Court, the 4th Judicial District Court of Rusk County set an execution date of January 15, 2019. The Supreme Court denied certiorari on October 9, 2018. *Milam v. Davis*, 139 S. Ct. 335 (2018) (Mem).

remanded his intellectual disability claim to the trial court "[b]ecause of . . . recent changes in the law pertaining to the issue of intellectual disability." *Ex parte Milam*, No. WR-79,322-02, <u>2019 WL 190209</u> (Tex. Crim. App. Jan. 14, 2019).

However, Mr. Milam never received that merits adjudication of whether he is intellectually disabled under current constitutional standards. Despite its prior authorization, the CCA adopted the trial court's finding that Mr. Milam's trial adjudication did not run afoul of the substantive Eighth Amendment rules announced in *Moore*, notwithstanding the State's urging the jury to reject Mr. Milam's claim based upon lay stereotypes. *Ex parte Milam*, No. WR-79,322-02, <u>2020 WL 3635921</u>, at *1 (Tex. Crim. App. July 1, 2020).[5]

_____

[5] Moreover, although the findings adopted by the CCA, which were authored by the State, also concluded that Mr. Milam "is not 'so impaired as to fall within the range of [intellectually disabled] offenders about whom there is a national consensus' against execution[,]" the findings are inconsistent and unclear about the grounds on which Mr. Milam's claim were rejected. *State's Proposed Findings of Fact, Conclusions of Law, and Order*, *Ex parte Milam*, CR 09-066 ¶ 238 (4th Dist. Ct., Rusk Cty., Oct. 16, 2019). Because the findings dispose of Mr. Milam's intellectual disability claim under Section 5(a)(3) without it ever having been authorized under that mechanism, Mr. Milam reads the findings ultimately to conclude his intellectual disability claim was disposed of on procedural grounds. *See Ex parte Blue*, <u>230 S.W.3d 151, 163</u> (Tex. Crim. App. 2007) ("The statutory scheme as a whole does not call upon us to make a determination of the merits of a subsequent writ application at [the pleading stage].") Otherwise, denial of Mr. Milam's intellectual disability claim on the merits without him ever having been afforded the opportunity to present evidence

On July 31, 2020, the 4th District Court of Rusk County set an execution date for Mr. Milam of January 21, 2021.

### D. Federal proceedings following state court dismissal.

On September 30, 2020, Mr. Milam filed in this Court a Motion for Order Authorizing the District Court to Consider Second or Successive Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2244 ("Motion for Authorization"). In light of the new, substantive Eighth Amendment standard announced in *Moore*, Mr. Milam sought to raise for the first time in federal court the claim that the State of Texas cannot execute him because he is intellectually disabled. On October 27, 2020, this Court denied authorization on the ground that Mr. Milam could not establish the prior unavailability of an intellectual disability claim, whether under *Moore* or *Atkins*, in accordance with 28 U.S.C. § 2244(b)(2)(A). *In re Milam*, No. 20-40663, Order at 5–6 (5th Cir. Oct. 27, 2020).

On December 15, 2020, Mr. Milam filed a Petition for Writ of Habeas Corpus Pursuant to § 2254 in the United States District Court for the Southern District of Texas, alleging that the State of Texas does

---

and prove his claim would create significant due process concerns. *Fuentes v. Shervin*, 407 U.S. 67, 80 (1972).

not have the power to execute him because he is intellectually disabled under *Moore* and current clinical standards. ROA.4–43. The Petition provided substantial support for that claim. After *Moore v. Texas*, both clinical and legal definitions of intellectual disability require evidence of: 1) subaverage intellectual functioning; 2) significant limitations in adaptive skills; and 3) manifestation of these symptoms in the developmental period. *Moore*, 137 S. Ct. at 1045. Three of the four psychological experts who have been asked to evaluate Mr. Milam for all three prongs of intellectual disability—including an expert retained by the State at trial—have determined that he meets these criteria and is intellectually disabled. 53 RR 239; ROA.63, 117.

First, the Petition alleged that IQ testing administered to Mr. Milam has resulted in scores within the significantly subaverage range of intelligence on valid IQ testing. Before trial, both Dr. Paul Andrews, a defense expert, and Dr. Timothy Proctor, an expert for the State, administered the WAIS-IV, the most current version of a multifactorial IQ test, to Mr. Milam. Mr. Milam scored 71 and 68 on the tests,

respectively.[6] Additionally, Dr. Gripon, a State psychiatric expert who evaluated Mr. Milam before trial, formed the opinion that Mr. Milam "clearly has intellectual limitations" and "does not have normal intellectual potential." ROA.58. Dr. Gripon estimated Mr. Milam's IQ "to be in the range of 65 to 70."[7] ROA.58.

Second, the Petition alleged that Mr. Milam has significant deficits in his adaptive functioning. Adaptive behavior is categorized into the conceptual, social, and practical domains. This criterion is met when at least one these domains is sufficiently impaired. In this case, the only two psychologists to perform formal adaptive deficit assessments by administering rating scales and semi-structured interviews have concluded that Mr. Milam has significant adaptive deficits. Further, information from teachers, friends, employers and family members who

---

[6] Further, the scoring on a third FSIQ test administered to Mr. Milam pretrial was miscalculated. Dr. Andrews administered a Stanford-Binet 5 to Mr. Milam and calculated the score as an 80. However, Dr. Andrews made an error in scoring. The correct score on the Stanford-Binet is a 78. ROA.127–28. When the Flynn Correction is factored into this score, Mr. Milam's FSIQ score on the SB-5 is a 75, also in the range for intellectual disability. ROA.128. Even if that score were not considered, though, both WAIS scores are in the range of intellectual disability and Mr. Milam meets prong 1 under *Hall* and *Moore*. *Hall*, 572 U.S. at 723; *Moore*, 137 S. Ct. at 1050.

[7] Dr. Gripon's report also stated he estimated Mr. Milam's "intellectual level to be in the ranges of an IQ of 65 to 75." ROA.58.

knew Mr. Milam as a child and teenager corroborate these findings. ROA.23–36.

With regard to the conceptual domain, Mr. Milam is impaired in reading, writing, speech, and math and money management. ROA.25–30. At school and at work, he often needed instructions repeated and required substantial one-on-one assistance. ROA.65. Mr. Milam also has significant deficits in the receptive language area, as evidenced by his inability to understand and follow a list of grocery items; 51 RR 274; in the expressive language area, including the use of simple words, short sentence structures, and his inability to express himself; in the area of reading and writing, apparent from poor spelling, disorganized sentences and paragraphs, and the fact that Mr. Milam's mother had to fill out his application for employment; 53 RR 207; in the area of handling money, with Mr. Milam not understanding how to use a debit card, how to budget, and a history of purchasing items he already owned; 53 RR 215; and in the area of time management, Mr. Milam did not know how to read an analog watch. 53 RR 217.

In the social domain, Mr. Milam is frequently described as being awkward, shy, and quiet. ROA.30–33. He had low self-esteem, was

bullied, and, once he reached adolescence, he did not mature at the rate of his peers. Dr. Gripon, who evaluated Mr. Milam for the State prior to trial, wrote "[i]n visiting with Blaine Milam for almost four hours, it becomes glaringly obvious that he is quite simplistic. He has very simplistic ideas, is very naïve, extremely gullible, easily led . . . ." ROA.57.

Finally, with regard to the practical domain, he is deficient in his ability to conduct household tasks, such as cooking, laundry, making his bed, other household chores. ROA.33–36. He never independently sought or accessed medical resources, never had a bank account, and could not use a debit card. Dr. Gripon similarly noted significant difficulties with money concepts. ROA.53. Dr. Jack Fletcher also found that "[a]t a younger age, his self-care skills were under-developed . . ." and that "[h]e needed considerable support for any form of independent living." ROA.116.

Third, the Petition alleged that these deficits began before the age of 18. Mr. Milam was arrested for the underlying capital offense when he was 18. The overwhelming majority of the evidence of his intellectual disability originates from the developmental period. ROA.36–37.

Along with his Petition, Mr. Milam filed a Memorandum of Law in Support of Authority to Review. ROA.228–59. On December 16, 2020, the case was transferred to the United States District Court for the Eastern District of Texas, which received the case the following day. ROA.263–68. The same day it opened the case, the district court issued an Order of Transfer construing Mr. Milam's Petition as a second or successive petition requiring authorization by this Court and transferring it to this Court "in the interest of justice."[8] ROA.269–75. On December 18, 2020, Mr. Milam timely filed a Notice of Appeal of that order.

## SUMMARY OF THE ARGUMENT

No federal court has ever adjudicated Mr. Milam's claim that the Eighth Amendment categorically prohibits Texas from executing him. Mr. Milam first sought to obtain such adjudication by filing a Motion for Authorization requesting permission from this Court to proceed in district court with the claim that the Eighth Amendment prohibits his execution because he is intellectually disabled according to current clinical criteria. Constrained by the requirements of 28 U.S.C. § 2244(b),

---

[8] Mr. Milam is not filing a motion for authorization to file a successive petition under 28 U.S.C. § 2244(b)(3). This Court has already denied Mr. Milam such authorization for his intellectual disability claim. *In re Milam*, No. 20-40663 (5th Cir. Oct. 27, 2020). Thus, he proceeds now on appeal of the district court's transfer order.

this Court held that he did not satisfy any exceptions to the successor bar. *In re Milam*, Case No. 20-40663 (5th Cir. Oct. 27, 2020). Thus, § 2244(b) precluded that avenue for federal habeas review of Mr. Milam's Eighth Amendment claim. Consequently § 2244(b) threatens to imbue Texas with the power to do that which the Constitution absolutely prohibits—execute a person who falls within a class whose execution is forbidden by the Eighth Amendment.

In light of this Court's ruling that he could not meet the requirements to file a successive habeas petition, Mr. Milam filed his Petition in district court raising the claim that the State of Texas does not have the power to execute him because he is intellectually disabled. Alongside his Petition Mr. Milam filed a Memorandum of Law in Support of Authority to Review, explaining to the district court why § 2244(b) did not prevent the district court from reviewing the merits of Mr. Milam's intellectual disability claim. ROA.228–59. Rather than engaging with the merits of these arguments, the district court transferred the Petition to this Court under the mistaken belief that this Court's ruling on Mr. Milam's Motion for Authorization barred the district court from

reviewing his intellectual disability claim and that authorization was required from this Court under § 2244(b)(3). ROA.273.

The district court's failure to engage with the merits of Mr. Milam's arguments abdicates that responsibility to this Court. To the extent the district court's transfer was based on its belief that Mr. Milam's Motion for Authorization was an application for federal habeas relief, the district court's transfer constitutes clear error. Moreover, if § 2244(b) is indeed interpreted to bar any federal court review of Mr. Milam's intellectual disability claim, that statute is unconstitutional as applied to Mr. Milam because it operates to prevent courts from enforcing a substantive limitation absolutely prohibiting states from executing an intellectually disabled person, in violation of both the Eighth Amendment and the Suspension Clause. In other words, Mr. Milam would have forfeited a claim that, if proven, the State will impose an illegal sentence under the Eighth Amendment. To avoid these serious constitutional concerns, the Court should find that Mr. Milam's Petition is not "second or successive" within the meaning of § 2244(b).

The district court erred by not reviewing the merits of Mr. Milam's intellectual disability claim. This Court should remand the Petition to

the district court for merits review of that claim. Failure to do so would empower Texas to execute Mr. Milam in violation of the Eighth Amendment.

## ARGUMENT

### I. The district court erred in transferring Mr. Milam's Petition based on this Court's denial of his Motion for Authorization.

This Court reviews a district court's determination as to whether a petition filed pursuant to 28 U.S.C. § 2254 is second or successive *de novo*. *Graham v. Johnson*, 168 F.3d 762, 772 (5th Cir. 1999). A certificate of appealability is not required to appeal an order construing a petition for writ of habeas corpus pursuant to § 2254 as second or successive. *See United States v. Fulton*, 780 F.3d 683, 688 (5th Cir. 2015) (explaining that "a transfer order resolves an issue completely separate from the merits of the action" and an appeal therefrom therefore does not require a certificate of appealability).

In construing Mr. Milam's Petition as a second or successive petition requiring authorization, the district court appeared to reason that his Petition ran afoul of the successor bar under 28 U.S.C. § 2244(b)(1). That provision states that "[a] claim presented in a second or successive habeas corpus application under section 2254 *that was*

*presented in a prior application* shall be dismissed." (emphasis added). The district court found that because "the Fifth Circuit has already considered and rejected Petitioner's intellectual disability claim based on *Atkins* and *Moore*" in his Motion for Authorization, by filing the Petition, Mr. Milam was asking the district court to "reconsider the merits of his intellectual disability claim in light of *Moore*." ROA.273. The district court's conclusion appears to misconstrue Mr. Milam's Motion for Authorization previously before this Court as a "prior application" within the meaning of § 2244(b)(1).

Any such holding was clear error.[9] "[A] motion for authorization to file a successive petition is not itself an 'application for a writ of habeas corpus.'" *Fierro v. Cockrell*, 294 F.3d 674, 680 (5th Cir. 2002). An application is a filing that alleges facts upon which, if proven, relief can be granted. By contrast, a motion for authorization "does not call for (or even permit) a decision on the merits." *Id.* (quoting *Holman v. Gilmore*, 126 F.3d 876, 879–80 (7th Cir. 1997)).

---

[9] Mr. Milam recognizes that it is not entirely clear whether, or how much, of the district court's perfunctory decision to transfer was based on § 2244(b)(1). However, because this is a plausible interpretation of the district court's order, Mr. Milam briefs the issue here.

When this Court considered Mr. Milam's Motion for Authorization, it confronted only the question of whether Mr. Milam made a "prima facie showing" upon the elements of § 2244(b)(2)(A). 28 U.S.C. § 2244(b)(3)(C). Review by this Court of Mr. Milam's allegations under the authorization procedure of § 2244(b)(3) did not extend beyond whether Mr. Milam had made "a sufficient showing of possible merit to warrant fuller exploration by the district court." *In re Campbell*, 750 F.3d at 530 (5th Cir. 2014) (citing *In re Hearn*, 418 F.3d 444, 445 (5th Cir. 2005)). Thus, this Court's Order did not, and could not, resolve the merits of Mr. Milam's intellectually disability claim. The district court's conclusion to the contrary was in error.[10]

Mr. Milam's Motion for Authorization does not constitute a "prior application" within the meaning of § 2244(b)(1). The district court therefore erred in transferring Mr. Milam's Petition based on its

---

[10] The authorization procedure under 28 U.S.C. § 2244(b) further makes clear that a motion for authorization is distinct from a habeas corpus application. Although a court of appeals performs an initial gatekeeping function pursuant to § 2244(b)(3), including by determining whether a claim presented in a successive petition meets the dictates of § 2244(b), the district court too performs a second gatekeeping function by reassessing whether the claims before it satisfy § 2244(b). Hence, if a motion for authorization were construed as a petition within the meaning of § 2244(b)(1), every claim raised in a motion for authorization would run afoul of § 2244(b)(1) upon reaching the district court.

erroneous conclusion that Mr. Milam's Motion for Authorization constituted a "prior application" under 28 U.S.C. § 2244(b)(1). As the district court correctly noted, Mr. Milam's initial federal habeas proceedings did not include a claim that the Eighth Amendment forbids his execution because he is intellectually disabled.[11] ROA.271. Mr. Milam's Motion for Authorization previously before this Court does not displace that conclusion.

## II.   The district court erred in transferring Mr. Milam's Petition on the ground that it required authorization under 28 U.S.C. § 2244(b)(3).

Mr. Milam presented the district court with numerous arguments supporting its authority to review his Petition. These included that § 2244(b) is unconstitutional as applied to Mr. Milam's intellectual disability claim, or in the alternative, that the Petition was not

---

[11] The district court also erroneously states that Mr. Milam "raised an intellectual disability claim in his first federal habeas petition within the context of *Martinez/Trevino*, which was considered and denied by [the district court] on the merits." ROA.270. In his Initial Petition, Mr. Milam alleged that appellate and state habeas counsel were ineffective for failing to raise the claim that he was mentally retarded under *Hall v. Florida*, 572 U.S. 701 (2014). *Milam v. Stephens*, No. 4:13-cv-545, Petition for Writ of Habeas Corpus at 86. Mr. Milam did not raise a distinct intellectual disability claim. The State conceded that Mr. Milam did not previously raise an intellectual disability claim in his federal habeas litigation. *In re Milam*, No. 20-40663, Opposition to Motion for Order Authorizing the District Court to Consider Second or Successive Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2244, at 26

successive. ROA.228–59. Yet, the district court failed to address, or engage with in any meaningful way, the arguments Mr. Milam presented. Instead, the district court summarily transferred Mr. Milam's Petition on the ground that it required authorization from this Court to consider Mr. Milam's intellectual disability claim. ROA.273.

However, the district court's characterization of Mr. Milam's petition as being subject to § 2244(b)(3) threatens to suspend the Eighth Amendment prohibition on the execution of persons with intellectual disability as to Mr. Milam. This Court should therefore reject that characterization so as to ensure that, in effect, § 2244(b)(3) does not permit Texas to unconstitutionally execute a person with intellectual disability.

### A. Should 28 U.S.C. § 2244(b) bar any federal court review of Mr. Milam's Eighth Amendment claim, it is unconstitutional as applied to him.

Mr. Milam does not challenge that § 2244(b) can be constitutionally applied to bar federal review of claims in general. However, as applied to his intellectual disability claim—and particularly because he has never received *any* federal court review of that claim—that statute may not be applied in a manner that effectively empowers Texas to violate

22

substantive restrictions on states imposed by the Eighth Amendment. Moreover, the foreclosure of review under these circumstances renders its application problematic under the Suspension Clause. Mr. Milam presented both of these arguments to the district court in support of its authority to review his petition, ROA.248–49, 255–57, but the district court failed to address them in its transfer order.

### 1. The application of 28 U.S.C. § 2244(b) to bar any federal habeas review of Mr. Milam's intellectual disability claim violates the Eighth Amendment.

It is indisputable that the Eighth Amendment categorically prohibits states from executing an intellectually disabled person. *Atkins*, 536 U.S. at 31; *In re Campbell*, 750 F.3d at 535. It is a substantive restriction placed on states that limits their power to do a certain act. Such substantive limitations on government—where derived from the Eighth Amendment—are neither forfeitable by inaction nor waivable by the parties. *See White v. Commonwealth*, 600 S.W.3d 176, 180 (Ky. 2020), *cert. denied sub nom. Kentucky v. White*, No. 20-240, 2020 WL 7132266 (U.S. Dec. 7, 2020) ("[W]hen a punishment is prohibited by the Eighth Amendment blocking an entire category of individuals from a certain penalty, and evidence has been established creating a reasonable doubt

as to whether a defendant is a member of that category, the issue cannot be waived."); *Commonwealth v. Brown*, <u>71 A.3d 1009, 1015</u>–16 (Pa. 2013) ("[A] claim that a sentence violates an individual's right to be free from cruel and unusual punishment" under *Miller v. Alabama*, <u>587 U.S. 460</u> (2012), "is a challenge to the legality of the sentence, rendering the claim unwaivable."); *Garza v. State*, <u>435 S.W.3d 258, 262</u> (Tex. Crim. App. 2014) ("Substantive status-based or individualized-sentencing claims under the Eighth Amendment . . . are not forfeited by inaction."); *Webster v. Daniels*, <u>784 F.3d 1123, 1139</u> (7th Cir. 2015) (en banc) (refusing to find substantive Eighth Amendment claim forfeited following ruling by different circuit court that the claim did not meet an exception to the successor bar for federal cases contained in <u>28 U.S.C. § 2255(h))</u>.

The Eighth Amendment itself requires this conclusion. A punishment imposed in violation of a categorical rule does not just render the prisoner's custody unlawful; the judgment itself is deemed void. *See Montgomery*, <u>136 S. Ct. at 731</u> ("A conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void."). To hold otherwise would, for example, permit a 15-year-old person facing capital murder charges and who has been

certified to stand trial as an adult to waive the Eighth Amendment restriction against execution of juveniles, or to forfeit that protection by inaction. If, after conviction and death sentence, such person sought to enforce the Eighth Amendment restriction in a federal habeas corpus proceeding, the Eighth Amendment would require disregarding the waiver or forfeiture. To do otherwise would empower the State to do what the Constitution substantively disempowers it from doing. *See Webster*, 784 F.3d at 1139 ("To hold [a substantive Eighth Amendment claim forfeited by inaction] would lead in some cases . . . to the intolerable result of condoning an execution that violates the Eighth Amendment.").

Accordingly, finding a substantive Eighth Amendment claim to be forfeited and withholding review of it due to an inability to meet any exceptions to the § 2244(b) successor bar raises substantial questions about that provision's constitutionality under the Eighth Amendment as applied to this case. If applied to bar any federal court review of Mr. Milam's intellectual disability claim, § 2244(b) would run afoul of the immovable principle that the Constitution is the "the *supreme* law of the land[.]" *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 180 (1803) (emphasis in original). A statute—in this instance, § 2244(b)—that would enable the

25

state to act in contravention of the Constitution must yield to the Constitution. Failure to follow this principle would "subvert the very foundation" on which our country is based. *Id.* at 138.

> ## 2. The application of 28 U.S.C. § 2244(b) to bar any federal habeas review of Mr. Milam's intellectual disability claim violates the Suspension Clause.

The application of § 2244(b) to foreclose federal review of Mr. Milam's claim that the Eighth Amendment prohibits his execution because he is intellectually disabled also raises serious constitutional questions under the Suspension Clause. The Suspension Clause provides that: The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it. U.S. CONST. art. I § 9, clause 2. "The writ should be available whenever there clearly has been a fundamental miscarriage of justice for which no other adequate remedy is presently available." *Sunal v. Large*, 332 U.S. 174, 189 (1947); *cf. Ibarra*, 738 F. App'x at 821 (Graves, J., dissenting in part) ("More importantly, failure to consider the claim would result in a fundamental miscarriage of justice if an intellectually disabled man were to be unconstitutionally executed."); *Webster*, 784 F.3d

at 1139 ("a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence").

If Mr. Milam is intellectually disabled, his sentence of death is void and his execution would violate the Eighth Amendment. *Montgomery*, 136 S. Ct. at 731 ("A conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void."). As applied to Mr. Milam's Eighth Amendment claim, § 2244(b) functions to place his claim that his execution is prohibited by the Eighth Amendment beyond the reach of federal courts' habeas jurisdiction. Although the Supreme Court has cursorily rejected the argument that 28 U.S.C. § 2244(b) constitutes an unconstitutional suspension of the writ in general, that determination was made in a case that did not implicate the interplay between § 2244(b) and a claim raising a substantive limitation on the State's power to constitutionally carry out an execution, as Mr. Milam's does. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996).

The *Felker* Court did, however, note that "the Suspension Clause of the Constitution refers to the writ as it exists today, rather than as it existed in 1789." *Id.* The Eighth Amendment has similarly evolved to reflect that the execution of certain classes of persons violates the

prohibition on cruel and unusual punishment. It would be anomalous to find that the writ did not similarly evolve to ensure that the Eighth Amendment could be given effect in habeas corpus as to those classes of persons. *Harris v. Nelson,* 394 U.S. 286, 291 (1969) ("The scope and flexibility of the writ [of habeas corpus]—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.").

**B. To avoid the complex questions regarding the constitutionality of 28 U.S.C. § 2244(b) as applied to Mr. Milam, the Court should hold that Mr. Milam's Petition does not constitute a "second or successive" petition within the meaning of that statute.**

Where a statute's construction would "raise serious questions concerning the constitutionality of [that statute], and in such a case, 'it is a cardinal principle that [a court] will first ascertain whether a construction of the statute is fairly possible by which the (constitutional) question(s) may be avoided.'" *Johnson v. Robison*, 415 U.S. 361, 366–67 (1974) (quoting *United States v. Thirty-Seven Photographs*, 402 U.S. 363,

369 (1971)); *see I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300 (2001) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems.") (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).

AEDPA has never required that federal courts "bear[] blinders" in applying  the terms of the statute. *McQuiggin v. Perkins*, 569 U.S. 383, 394 (2013) (plurality opinion). "[AEDPA's] purposes, and the practical effects of [courts'] holdings, should be considered when interpreting AEDPA." *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). Departure from AEDPA's strictures has therefore been permitted even in circumstances that do not implicate the Eighth Amendment's substantive limit on states' power to execute certain classes of offenders. *See McQuiggin*, 569 U.S. at 392 (finding that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief").

"The phrase 'second or successive' is a term of art given substance in [the Supreme Court's] prior habeas cases." *Slack v. McDaniel*, <u>529 U.S. 473, 486</u> (2000); *see Felker*, <u>518 U.S. at 664</u> ("The new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'"). A petition pursuant to <u>28 U.S.C. § 2254</u> is not "second or successive" merely because it is second-in-time to a prior federal habeas petition. *See Panetti*, <u>551 U.S. at 944</u> ("The Court has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively, even when the later filings address a state court judgment already challenged in a prior § 2254 application."). This Court recognizes that principle. *Leal Garcia v. Quarterman*, <u>573 F.3d 214, 220</u> (5th Cir. 2009).

Applying abuse of the writ principles, the Supreme Court has determined that a second-in-time petition raising a claim that the petitioner did not have a full and fair opportunity to raise previously does not constitute a second or successive petition within the meaning of § 2244(b). *Stewart v. Martinez-Villareal*, <u>532 U.S. 637, 645</u> (1998) (concluding that second-in-time petition raising claim previously dismissed as premature did not constitute second or successive petition

because the second-in-time application would not have been considered to be an abuse of the writ); *Panetti*, 551 U.S. at 947 (concluding that there was "no argument that petitioner's actions constituted an abuse of the writ" where petitioner sought to raise claim that was unripe at time of prior proceedings). Here, Mr. Milam's Petition, raising the claim that the State of Texas cannot execute him because he is intellectually disabled, similarly does not abuse the writ.

Mr. Milam presented to the district court arguments that his Petition was not successive in support of its authority to review his petition, ROA.249–55, but the district court did not engage with them in its transfer order.

1. **Mr. Milam's Petition is a second-in-time initial petition because the Eighth Amendment prohibition runs to execution and the adjudication of intellectual disability must be informed by current legal and clinical standards.**

The Supreme Court has recognized that a second-in-time petition "brought in an application when that claim is first ripe" constitutes an initial petition and is not subject to § 2244(b). *Panetti*, 551 U.S. at 945. Now that the State of Texas has set an execution date, Mr. Milam seeks to have his claim that the Eighth Amendment forbids his execution

because he is intellectually disabled adjudicated under current constitutional and clinical standards for the first time. His Petition is therefore an initial second-in-time petition.

The Eighth Amendment prohibits the act of executing persons with an intellectual disability. *See Atkins*, 536 U.S. at 321 ("[T]he Constitution 'places a substantive restriction on the State's power *to take the life*' of a[n intellectually disabled] offender.") (quoting *Ford*, 477 U.S. at 405) (emphasis added); *Hall*, 572 U.S. at 708 ("[P]ersons with intellectual disability may not *be executed*.") (emphasis added); *Moore*, 137 S. Ct at 1051 ("States may not *execute* anyone in the *entire* category of [intellectually disabled offenders[.]") (internal quotation and citation omitted; first emphasis added).

In *Moore*, the Supreme Court made clear that execution-eligibility questions involving intellectual disability must be assessed under current clinical standards. *Moore*, 137 S. Ct. at 1053 ("The medical community's current standards supply one constraint on States' leeway" to define the class of intellectually disabled persons.). And while a person's intellectual disability may be stable over time, generally, "the medical standards used to assess that disability constantly evolve as the

scientific community's understanding grows." *Bourgeois v. Watson*, 2020 WL 7296816, 592 U.S. __, at *3 (2020) (Sotomayor, J., dissenting from denial of *certiorari*). And, as demonstrated by *Moore*, the substantive Eighth Amendment law governing these adjudications likewise changes. Thus, persons who may be adjudicated not intellectually disabled at some earlier point in time may nevertheless be adjudicated intellectually disabled at some later time. *See* n.3, *supra* (listing examples).

Whether grounded in competency or intellectual disability, the Eighth Amendment prohibition is in part informed by the fact that as to these classes of persons, execution serves no penological purpose. *Ford*, 477 U.S. at 407 (execution of a person who is incompetent at the time of execution "contributes nothing to whatever deterrence value is intended to be served by capital punishment"); *Hall*, 572 U.S. at 708 ("No legitimate penological purpose is served by executing a person with intellectual disability."). In short, "the distinction regarding stability over time cannot overshadow what incompetency and intellectual disability have in common: If a person suffers from either, he cannot be executed." *Lee v. Kelley*, 854 F.3d 544, 549 (8th Cir. 2017) (Kelly, J., concurring); *Rivera v. Quarterman*, 505 F.3d 349, 358 (5th Cir. 2007) (highlighting

"the similarity of the competency and [intellectual disability] issues: both decisions affirmatively limit the class of persons who are death penalty eligible").

Because execution is prohibited by the Eighth Amendment, an application raising such a claim ripens when an execution becomes imminent—particularly where there have been demonstrable changes in both the legal and clinical standards governing intellectual disability determinations. Accordingly, the Court should hold that a petition raising such a claim is a second-in-time initial habeas corpus petition.[12] *Panetti*, 551 U.S. at 945.

### 2. Mr. Milam's petition does not constitute an abuse of the writ because he did not have a full and fair opportunity to raise his Eighth Amendment claim in a prior application.

"[I]f the petitioner had no fair opportunity to raise the claim in the prior application, a subsequent application raising that claim is not 'second or successive,' and § 2244(b)(2)s bar does not apply." *Magwood v. Patterson*, 561 U.S. 320, 346 (2010) (Kennedy, J., dissenting). In

---

[12] This is not a case in which a prior application raising the claim was filed or received an adjudication. Such a case might present a different question, or require further delineation of when previously adjudicated substantive Eighth Amendment claims will or will not require adjudication anew. Those questions are not presented here.

*Magwood*, three concurring Justices agreed with the four dissenting Justices that "if [petitioner] were challenging an undisturbed state court judgment for the second time, abuse-of-the-writ principles would apply, including *Panetti*'s holding that an 'application' containing a 'claim' that 'the petitioner had no fair opportunity to raise' in his first federal habeas petition is not a 'second or successive' application." *Id.* at 343 (Breyer, J., concurring, joined by Justices Stevens and Sotomayor) (citing *id.* at 345 (Kennedy, J., dissenting).

Mr. Milam recognizes that this Court determined that an intellectual disability claim was not "previously unavailable" to him within the meaning of § 2244(b)(2)(A). *In re Milam*, No. 20-40663 (5th Cir. Oct. 27, 2020). However, it does not necessarily follow that Mr. Milam had a full and fair opportunity to litigate this claim previously during his initial federal habeas proceedings as understood within the traditional abuse-of-the-writ doctrine. If he did not have a full and fair opportunity to present and obtain review of his intellectual disability allegations under the appropriate constitutional standard, the petition can be considered not to be "second or successive" within the meaning of § 2244(b). *Magwood*, 561 U.S. at 343.

At the time Mr. Milam filed his initial federal habeas petition, federal review of an intellectual disability claim was governed by Texas's stereotype-laden standard on intellectual disability, which Mr. Milam could not meet. Motion for Authorization at 11–12. Furthermore, Texas courts continued to apply an unconstitutional standard to the determination of intellectual disability well after the Supreme Court's decision in *Moore* and after Mr. Milam's initial federal habeas application was denied. *Moore*, 139 S. Ct. at 671–72 (finding that Texas state court's determination was "inconsistent with our opinion in *Moore*" because of its continued reliance on factors rejected in *Moore*).

Moreover, Congress itself has deemed one year from the announcement of a new, retroactive rule to be a reasonable time within which to file claim based on that new rule. 28 U.S.C. § 2244(d). Here, the district court denied Mr. Milam's initial federal habeas petition less than five months after the Supreme Court's decision in *Moore*. Mr. Milam could not know when the district court would rule in his case while it was pending, and that the one-year period from the announcement of *Moore* would thus be cut short to less than five months. Hence, Mr. Milam here did not have a full and fair opportunity to present that claim within the

36

less than five months in between *Moore* and the district court's decision, falling very short of the one-year period envisaged by Congress. Finally, application of the abuse of the writ principles here leading to the finding that Mr. Milam's petition is not second or successive does not frustrate AEDPA's purpose. AEDPA was designed to "further the principles of comity, finality, and federalism." *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (internal quotation omitted). Here, Mr. Milam seeks a first opportunity for a federal court to adjudicate the merits of whether he is intellectually disabled according to current clinical standards, and under the new rule of constitutional law announced in *Moore*. This claim strikes at the heart of the state's power to punish. *See Montgomery*, 136 S. Ct. at 731 ("a court has no authority to leave in place a conviction or sentence that violates a substantive rule"). Should Mr. Milam prove his allegations, the State will be categorically prohibited from executing him. *See Atkins*, 536 U.S. at 321 ("[T]he Constitution 'places a substantive restriction on the State's power to take the life' of a[n intellectually disabled] offender.") (quoting *Ford*, 477 U.S. at 405). Thus, the principles of comity, finality, and federalism lose force when they operate to

preclude adjudication of a categorical claim and should not obstruct this Court's ability to hear Mr. Milam's intellectual disability claim.

> **3. Should this Court find that Mr. Milam's Petition does constitute an abuse of the writ, Mr. Milam can show that a fundamental miscarriage of justice would result from failure to consider his Eighth Amendment claim.**

If this Court nevertheless finds that Mr. Milam's intellectual disability claim would run afoul of principles of abuse of the writ, "the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McKleskey v. Zant*, 499 U.S. 467, 495 (1991). Here, Mr. Milam's intellectual disability claim clearly falls within the "narrow scope of the fundamental miscarriage of justice exception" because if proven, it would establish that Mr. Milam is innocent of the death penalty. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (miscarriage of justice exception to abuse of the writ encompasses actual innocence of the offense and of the death penalty).

Mr. Milam can make a prima facie claim that the State of Texas does not have the power to execute him because he is intellectually disabled. A miscarriage of justice would therefore result should Mr.

Milam be denied any opportunity to prove his innocence of the death penalty, and the State of Texas thus permitted to execute him in violation of the Eighth Amendment. *See Ibarra*, 738 F. App'x at 821 (Graves, J., dissenting in part) ("More importantly, failure to consider the claim would result in a fundamental miscarriage of justice if an intellectually disabled man were to be unconstitutionally executed."); *cf. Prieto v. Zook*, 791 F.3d 465, 472–73 (4th Cir. 2015) (finding that, on the facts, petitioner's allegations of intellectual disability did not establish miscarriage of justice to excuse procedural default of *Atkins* claim).

"[E]quitable principles have traditionally governed the substantive law of habeas corpus," and federal courts will "not construe a statute to displace courts' traditional equitable authority absent the clearest command." *Holland v. Florida*, 560 U.S. 631, 646 (2010) (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *Miller v. French*, 530 U.S. 327, 340 (2000); *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979)) (internal quotation marks omitted). In *Holland*, the Court concluded that the traditional equitable tolling exception to a limitations period defense survived the passage of 28 U.S.C. § 2244(d) notwithstanding Congress's enactment of a statutory tolling provision that did not include equitable

tolling. 560 U.S. at 645. And in *McQuiggin*, the Court held that the miscarriage of justice exception itself survived and could be applied as an equitable exception to a limitations period defense notwithstanding its absence in the AEDPA's statutory framework as an exception. 569 U.S. at 393.

That Congress provided no explicit exception for a miscarriage of justice based upon substantive Eighth Amendment rights cannot operate as the "clearest command" necessary to repeal this traditional equitable exception. Indeed, "the fact that the Supreme Court had not yet decided *Atkins* and *Roper* at the time AEDPA was passed supports the conclusion that the narrow set of cases presenting issues of constitutional eligibility for execution is another lacuna in the statute." *Webster*, 784 F.3d at 1138.

Accordingly, the Court should interpret the AEDPA not to displace this Court's equitable authority to recognize a miscarriage of justice and direct that merits review occur.

## CONCLUSION

The district court erred by transferring Mr. Milam's Petition for Writ of Habeas Corpus to this Court. Therefore, this Court should

remand his Petition back to the district court with instructions to consider the merits of Mr. Milam's intellectual disability claim.

/s/    Jeremy Schepers
Jeremy Schepers
Supervisor, Capital Habeas Unit
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2286 (fax)
Jeremy_Schepers@fd.org

/s/    Jennae R. Swiergula
Jennae R. Swiergula
Texas Defender Service
1023 Springdale Road #14E
Austin, TX 78721
512-320-8300
512-477-2153 (fax)
jswiergula@texasdefender.org

**CERTIFICATE OF SERVICE**

I certify that on December 28, 2020 I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will serve counsel for the Director, Tomee Heining, tomee.heining@oag.texas.gov.

/s/ Jeremy Schepers
Jeremy Schepers

**CERTIFICATE OF COMPLIANCE**

I certify that (1) this brief was prepared in 14-point Century Schoolbook font using Microsoft Word software, (2) this brief is 8,717 words, excluding the parts of the brief exempted by the rules of court, and (3) this brief has been scanned for viruses and the brief is virus-free. Counsel further certifies that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13.

/s/ Jeremy Schepers
Jeremy Schepers